Good afternoon, your honors. Ralph Rogeri, I represent Jose Zelaya on his federal and state law claims arising out of his arrest and subsequent beating while confined in the Twin Towers Jail in downtown Los Angeles. I'd like to begin with the beating claims. I believe that the decision of the district court should be reversed because there was both a legal error and a failure in proof by the defendant, County of Los Angeles in this case. There was no evidence whatsoever offered by the county in its motion for summary judgment with respect to the Monell claim arising out of the beating that Mr. Zelaya took while he was confined in the jail. Forty facts were set forth in their separate statement, not one of which went to any of the issues raised by the Monell claim. For that reason alone, summary judgment was not appropriate with respect to the beating claim. Counsel, on your Monell point, is it your position that they have a policy to beat sex offenders? They allow it, so it is the equivalent of a practice. There is inaction and there is never any consequences for it happening and so it happens as a matter of routine. In short, yes, there is a practice that the deputies beat people who are accused of sexual misconduct. Okay, thank you. What is the factual support for that claim? Well, since the defense never even raised or disputed it or put any evidence out there. They still have to have evidence. Well, I think though that the constitutional right is for a jury trial and yes, we have to have evidence and it is our burden of proof. They don't have evidence that there was a policy. Well, only if they meet their burden initially in moving for summary judgment. I mean, they can't just come in and say, well. That's not true. I mean, yes, they have to come in and they have to say there is no evidence that there was such a policy. You have to come up with some evidence that there was a policy. Right, but they didn't do that. They didn't put any evidence from anybody saying anything with respect to any policy or as applied to this case. Well, on that point, I think it's your client's burden. So I don't think they have to put in evidence of the absence of a policy. Whether you'd have to show evidence of a policy or ratification or something like that. I think that at trial, that is definitely true. It seems to me that the interesting legal question here is at the next stage on the state law question of the fact that you haven't actually identified the people who did the beating. Now, does that matter? No, it doesn't matter, Your Honor. And again, it depends on what your definition is of identify. The district court took the position that we had to have their names. And that is not a requirement of California law in any way, shape, or form. I do believe that, and I think that the county now agrees, that all there must be is evidence that a county employee or county agent acting within the course and scope of their employment, in fact, inflicted the harm or committed the tort here. And there was certainly plenty of evidence in this case that was offered in the declaration by Mr. Zelaya himself of what occurred. It can be certainly inferred. My understanding of what happened here was that you named does, and then there was some discovery, and then the county came up with the names of the seven people who were on duty that night. And then you never deposed them or tried to find out who was involved in this. Is that accurate, first of all? That is accurate, Your Honor. The only thing I would add to that is that it was difficult to get the list. But you got it eventually. Eventually, but at the conclusion of discovery. So our hands were somewhat tied by the failures of the county. But be that as it may, the evidence from Mr. Zelaya as to what happened to him must be believed with respect to summary judgment. And the only inference from his testimony and the evidence that he presented is that he was beaten by these four people who he described. One woman and three males, two of whom were Hispanic. He called them Spanish. And a woman who was also Hispanic. So is it a reasonable inference from what he said that the guards who beat him were acting in the scope of their employment? Yes. And there was no challenge to any of that. Also, we can look at the circumstances in which it occurred. He was in the jail. There was nobody else there. It was only these four people. There was nobody else who could have inflicted the beating excepting his testimony that he was beaten. It wasn't like he was beaten by some other prisoners or anything like that because the uncontradicted evidence was that he was there alone. The other people who were getting their uniforms on that particular day were all gone. They left him last. Everybody else had moved on. And when he was the last person there, that's when they attacked him and the attack commenced. You're stating a claim based on the California statute of assault and battery for the beating. Is that right? Yes. That's what we're talking about. You have not stated a claim for excessive force under the Fourth Amendment. No, because we had attempted to amend the complaint to add the people who were identified, but the district court did not allow the amendment. Why did he not allow the amendment? Her ruling was that it was not done in accordance with federal law. And you're not challenging that as such? In this appeal, we're not challenging that. We're challenging the dismissal of the case and the claim, the Monell claim, obviously, and we did have some evidence that we had offered with respect to the Monell claim, but the state law claim of battery does not require it to even be presented against the individual officers. It was against the county. And so unlike the federal law where you have to have the actual person who committed the battery or used the excessive force, that is not true under state law. The county is liable vicariously for the actions of its employees, in this case, the four people identified. And so we would ask that that component of the district court decision be reversed. We also believe that the district court went further on the false arrest claim and engaged in fact determination as opposed to the determination as to whether there was a factual dispute or not. The issue of probable cause being the burden on the defendant to establish the validity of the arrest in this particular case. And given the fact that it was an arrest at Mr. Zelaya's home, the need for exigent circumstances. Well, at his home, we don't know what that means, and you never raised this, I gather. Well, it was raised. It was in the evidence. What does at his home mean? He was at his home. Does it mean he was in his home or does it mean he was at the sidewalk in front of his house? What does it mean? Well, and that is the burden on the defendant to establish those particular items, because they are the ones who are moving for summary judgment. And so they must establish as a matter of law that. But you never raised this question. We challenged whether the sufficiency of their evidence. They were the ones who came in with misleading declarations that didn't address the entire circumstance here and simply said that. Also, even if it was in his house, we don't even know if they could have gotten in his house with consent, right? I mean, if they got into his house with consent, could they arrest him? They could have potentially arrested him. We have no idea what the circumstances of the arrest were. Agreed, Your Honor. There are any number of things that could have happened. In other words, you had pled a false arrest. You had not pled an invalid, procedurally invalid arrest, had you? Well, in California, and it's true under federal law, that an arrest without a warrant is presumptively unlawful. Did you plead? We pled an arrest without a warrant, Your Honor. They didn't have a warrant, so that's presumptively unlawful. And it is, therefore, their burden to establish the validity of the arrest. If it was by consent, or we want to speculate that they tricked him into coming outside of the house before they arrested him, and not within the curtilage, all of that was within, was part of their burden to establish, and they didn't do so. It's fair to say the gist of your complaint is that they lack probable cause, given the contradictory statements of the victims and others. Yes, with respect to the false arrest. But you acknowledge that the law in the Ninth Circuit is that an uncorroborated statement by the victim is sufficient to establish probable cause. Do you agree with that? No, I do not agree with that. I believe that when we're talking civil liability now, it is a jury question in the Ninth Circuit as to whether or not probable cause exists, and whether or not a reasonable person, a reasonable police officer, or all reasonable police officers in the case of qualified immunity would… Any reasonable police officer. would find probable cause. And one of the requirements, both under state law and federal law, is the requirement of an investigation. They did a very complete investigation. They then didn't listen to what anybody said except the victim, but they didn't do a complete… They didn't just do nothing. Right. And California law suggests, the Gillum decision, that that in and of itself is sufficient to establish a lack of probable cause or the absence of probable cause and an entitlement to a determination as a matter of law that probable cause didn't exist. Because when you come to the scene and your investigation reveals that the victim may not be worthy of belief and everything that you develop as a result of your investigation is that the alleged victim is not worthy or not trustworthy, you have to account for that. And when you don't account for that, that is not good faith. They went after her and they said, these people say that you said you made it up, and she then has an explanation for that. Well, the only thing that she had an explanation for was her admission that she had made it up or that she had admitted to them that she had lied. That's what they went back to her about because… She admitted to them that she lied, but she said, I didn't really lie. Well, no. She had told her, well, the cohabitants of the house that… What I mean is she said, but it actually is true even though I told them I lied. Right. Anyway, if you want to reserve any time, you should do it now. I will, yes. Thank you. May it please the court, Andrew Pongrass of the law firm of Seki Nishimura and Watase on behalf of the County of Los Angeles and all individual defendants. Yes, Your Honor. Andrew Pongrass of Seki Nishimura and Watase on behalf of all defendants. California law is clear that the individual tortfeasor must be named in order to establish vicarious liability. Munoz v. City of Union City is the case on point, and California law is clear. It's really a due process issue for the entity defendant. A good analogy would be a car accident where somebody was wearing a FedEx uniform gets into a car accident. Maybe they're on duty and maybe they're not, but the vicarious liability standard in California is the same whether it's a government entity or not. That's actually Hoff v. Bakavel Unified. You're saying, I think, maybe two distinct things. Are you saying he hasn't established that these people were employees acting in their employment capacity or are you saying he actually had to name names? He has to do both. Usually, I'm sorry, he has to establish course and scope. Usually that is done by naming names absent some exceptional circumstance. Well, here he's got a group of men in police uniform, right? Yes. A correctional officer. In a jail. Yes. All right. In a jail, which is a secure facility, so you don't have people roaming around free who could launch an attack on the plaintiff. Isn't it established sufficiently that these individuals were county employees? No, it's not. Because? Because, one, there are hundreds of deputies that are working within that facility. Twin Towers, the Inmate Reception Center, and Men's Central Jail are all adjoined. They are county employees? They are. Whether or not they're on duty or acting within the course and scope of their duty is an entirely different question. That's why we have discovery. And that's what the plaintiff should have done to prove up a vicarious liability claim. Because they didn't, that's why the claim fails. He says he tried to amend the complaint to add, what, all seven of them? Is that what it was trying to do? It's my recollection, yes. And while it's not part of the appellate record, I think the goal was name them all and let the court sort it out. That's improper under any – I mean, for whatever reason the court rejected that proposed amendment, it did so. And it's not on appeal here. It's not before the court. Even if he had, that's not the proper way to sort out this question. What the plaintiff wants to do is shift the burden and say, the county should be responsible for proving my case, for telling me who it was, to name names. And it's really not. It's the plaintiff's burden to present competent admissible evidence to make their case. And they didn't. First of all, my understanding is that there's actually a fair amount of case law that they don't have to name names, including some legislative history, too, and that Munoz was a very specific situation. So why is it Munoz that should govern here and not the other cases? Because Munoz states the general rule. The exception would be the Perez case or some exceptional circumstances where the plaintiff can make a prima facie showing or does make a showing, a factual showing of both employment relationship and course and scope, those specific elements. I don't think he at least made enough of a showing of employment relationship for summary judgment purposes. Someone could infer that these people in a police uniform in a jail handling this person were probably doing so within their employment capacity. Employment might be one question, and I'll submit on that. Course and scope is an entirely different scenario. There were only seven people that were actually working at that time. All you have to do is take their depositions or even send a request for admission that were you involved in an altercation with this individual. That narrows it down. There are tools available to do that, to make that showing. Then you find out who it was. Well, they could be lying. I mean, in other words, he still doesn't have a material fact and dispute. If he says there were seven people that you describe the people physically and what they were wearing and so on, and the state comes back and says, well, there were seven possible people, and all of them say they didn't do it, that doesn't lead to a denial of summary judgment anyway? If they all denied they did it? Do they win at that point for denying they did it? No. That would be a different factual question, and the issue would be there's a false assumption in plaintiff's reasoning that because there were only seven people on duty, it must be within that subset that did this. If they all were deposed and if they all said I had nothing to do with this, it would be incumbent upon the plaintiff to find out who did. If the county's employees did not do this alleged beating within the course and scope of their employment roles as deputy sheriffs, they might very well have a claim against that individual, but then the county has a very serious defense on vicarious liability grounds. So why can't the county defend anyway? Why can't the county say, you know, we've talked to all the possible people, nobody did it, it didn't happen? In other words, or we've talked to those seven people and none of them did it, so that's our defense, we're not vicariously liable because none of those seven people did it. Because we don't have the burden of proof at trial. We don't have to do that. Well, you have the burden, if he says that there were seven people from whom you could infer were employees acting within the course of their employment and apparently the vicarious liability is automatic, it doesn't depend on anything else about the relationship between those seven people and that's the difference between MUNAs. MUNAs, they were alleging negligent training, right? So you had to know who was being negligently trained to know what their training was. This is an automatic vicarious liability, right? No, no, no. If you had a rogue deputy who after his shift... I understand that, but if somebody was acting within the... the superiors shouldn't have to do anything, including negligently trained. There was nothing that the superiors had to do for the county to be liable. That's separate. That's the MUNEL issue and we're talking about state court... No, I'm talking about under California vicarious liability with regard to assault and battery, right? There's nothing there. It's vicarious liability, vicarious. It doesn't matter what they did. It doesn't matter what anybody above these people did or didn't do. For purposes of this motion, yes, I would concede that. That if they were on duty and they did this, there would at least be a triable issue. So that's the difference with MUNAs. In MUNAs, the allegation was negligently training. In order to know whether they're negligent training, A, occurred, who were you training negligently, and B, whether it was causative of what happened. You have to know who the person is. Here, why do you need to know who the person is? Because that's the law for vicarious liability under California law. Other than MUNOs, which we just established is different, I thought. That distinguishes the facts of MUNOs, but it also states the law that to prove vicarious liability, you must name the individual tortfeasor. That's MUNOs at 549. But MUNAs wasn't about vicarious liability. It was about vicarious liability and specifically vicarious liability under 815.2. All right. I'm sorry. I thought it was not. Go ahead. And it talks specifically about this issue, talking about why the person must be named. Because the trier of fact would need to determine the elements of vicarious liability, both of them. Not just that they're wearing a county uniform, but they were on duty. If you had a rogue deputy, that's the perfect example of why you cannot simply infer it here. Even though this is an interesting fact pattern where you have a secure facility, and your Honor's point is well taken, that does pique the interest from an academic point of view. But realistically, plaintiff didn't meet his burden. And even if that were an additional material. Counsel, Judge Gould, if I could interject a question. I'm really struggling with why the names are so important. Is it a reasonable inference that if he is beaten by a group of people dressed up as guards inside a secure jail, that at least some of them are acting for the county? As opposed to the idea that there's a group of rogue guards, or rogue people, who got in there and got the uniforms and beat them up. Why do the names matter? Your Honor, it matters respectfully because if that were the case, if there were rogue deputies who on their own time were beating up sex offenders, the county would not defend them. It would have the right not to defend them. It may not have to defend them or indemnify them. It could cross-complain against them. The plaintiff would have claims against them. They are in a very different scenario both substantively and procedurally from a deputy who is on duty wearing the county hat metaphorically and literally. Those are two very different factual scenarios for the county to analyze and defend and do whatever is appropriate. What about the Perez case? The Perez case was where you had four officers and there was a finding against two of them that they specifically did not commit a tort, and therefore it must have been the other two and it was conceded in Perez that those two were on-duty police officers. Therefore, there was sufficient evidence for the court there to affirm a vicarious liability finding, notwithstanding the fact that they weren't named. The individual employees were all exonerated, at least found that there wasn't enough evidence against any individual one of them. Right. All four of them, but still two of them, we don't know which two, had done this and therefore the entity was responsible. Because there, you knew who the four were and it was, there was a We knew who the four were, but we weren't able to prove that any one of the four actually did it. So apply that here. Neither the plaintiff nor anybody else can say, based on the record we have, that it was one of the seven or four of the seven that were on duty. That first logical But in Perez, they were all not held liable, so how does that help? Is that wrong? I thought all four of them were held not liable. They were. They were. That's true. But I think in order to draw an analogy But at the same time, two of them were responsible, but we don't know which two. So what difference does that make? How is that different from this? Because here we cannot say that it was four of the seven. That first step, that first logical relation to Perez is not met. We can't say it was definitely four of the seven. The plaintiff, even though he didn't take his discovery and figure out who it was, it was definitely four of the seven. That's not the facts here. But in that instance, you're saying you need this to defend yourself. They defended themselves, the entity. They won, i.e., each of the four was held not liable because you couldn't prove that any one of them actually did it. So if you defended yourself up to the hilt, you still wouldn't be any better off because there could still be a finding that four people who are employees actually in the courts of employment, whoever they may be, did it. The court is hitting home on the fact that this is a locked facility. It's what? It's a locked facility. It makes it easier to say who was there and who wasn't there. It actually would have made plaintiffs' burden in discovery easier to find out who did this to him. He didn't. It would have made it easier for him. And by the way, it was our... He could have a pretty hard time at trial trying to prove that this happened when you don't know who did it, but isn't that his problem? In our initial disclosures, we said seven people were working that day. Here's who they are. Figure out who did this to you. We didn't actually say that, but that's the inference. That's your initial disclosures. Not one deposition, no written discovery. It's the plaintiff's burden to present that evidence, and they didn't. That's why summary judgment was properly granted. Counsel, is it a reasonable inference that there was a group of, let's say, four rogue deputies who coordinated their actions in beating up the appellant? Why should we believe that happened? It's a good question, Your Honor. And whether or not it was four rogue deputies or whether these were deputies that were on duty, the fact that the plaintiff didn't do anything to even draw that inference or submit evidence to make that showing is why summary judgment was properly granted for the county. That's why. Because the question of a reasonable inference only arises once the plaintiff presents evidence for the court to draw that inference. And with that, unless anybody has anything else. Okay. You're beyond your time. Thank you very much. You have one minute on four seconds. A couple points, Your Honor. With respect to the Munoz decision, you are correct in that it was a supervisor, and so you're talking about liability. It was vicarious liability, but vicarious liability of a supervisor, which necessarily entails knowledge about who they were supervising so that those things could be done. But Perez, on the other hand, involved a situation like this, where it is a question of not supervision, but of a beating being administered by officers. In that particular case, all of the officers denied to participate in the beating of the plaintiff. And the court ultimately entered a judgment in favor of the individual officers, but against the county because he found that two people, he believed the plaintiff in that case, that he was beaten by at least two of the particular sheriffs here. Now, we've had a lot of talk about what was said by the county with respect to who was on duty that day. Whether that in itself is true or not remains to be seen, whether those were the people who were in that particular area or not. Mr. Zelaya testified clearly as to the identities of the people who beat him, and so he can be believed in this case, and he is to be believed with respect to this particular motion. The Supreme Court in the William Hart decision in 2012 talked about Munoz and the vicarious liability statute with respect to California law, and it adopted Perez and itself recognized that you don't have to specifically identify the people who are responsible in every situation. And it cited Perez for that very proposition, and it rejected categorically that the names and whatnot have to be identified in a pleading. So with that, unless there are any other questions, I will submit. The case of Zelaya v. County of Los Angeles is submitted, and we are in recess. Thank you.
judges: Gould, Berzon, Steeh